UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RONALD MARSHALL**                                                                        **CIVIL ACTION**

**VERSUS**                                                                                 **NO. 14-540**

**BOBBY JINDAL, ET AL.**                                                                   **SECTION: "E"(5)**

REPORT AND RECOMMENDATION

Plaintiff, Ronald Marshall, a state inmate, filed this federal civil rights complaint *pro se* and *in forma pauperis* against the following defendants: Bobby Jindal, the Governor of the State of Louisiana; James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections; and Robert Tanner, the Warden of the B.B. "Sixty" Rayburn Correctional Center. Plaintiff claims that the defendants are illegally imprisoning him at hard labor.[1] For the following reasons, the undersigned recommends that this matter be dismissed.

---

[1] The instant lawsuit is one of nine virtually identical civil actions simultaneously filed by different prisoners at the B.B. "Sixty" Rayburn Correctional Center. The other cases are: *Larry Lewis v. Bobby Jindal*, Civ. Action No. 14-537 "C"(4); *Talama Lewis v. Bobby Jindal*, Civ. Action No. 14-538 "C"(1); *Lawrence Marrero v. Bobby Jindal*, Civ. Action No. 14-539 "I"(5); *Joseph I. Smith v. Bobby Jindal*, Civ. Action No. 14-541 "S"(3); *Mark Q. Taylor v. Bobby Jindal*, Civ. Action No. 14-542 "B"(4); *Earl Brown v. Bobby Jindal*, Civ. Action No. 14-553 "F"(3); and *Edward Cager v. Bobby Jindal*, 14-554 "G"(3); and *Benyale Davis v. Bobby Jindal*, Civ. Action No. 14-555 "I"(5).

### *I. Motion for Class Certification*

Before turning to the underlying claims asserted, the Court notes that plaintiff moves to have this matter certified as a class action.[2] However, that motion should be denied because it is well-established that *pro se* litigants, such as plaintiff, should not be allowed to serve as class representatives. As the United States Tenth Circuit Court of Appeals has noted:

> Under Rule 23(a)(4) [of the Federal Rules of Civil Procedure], a class representative must "fairly and adequately protect the interests of the class." A litigant may bring his own claims to federal court without counsel, but not the claims of others. This is so because the competence of a layman is clearly too limited to allow him to risk the rights of others.

*Fymbo v. State Farm Fire & Casualty Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) (internal quotation marks and citations omitted); *see also Powers v. Clay*, C.A. No. V-11-051, 2011 WL 6130929, at *3 (S.D. Tex. Dec. 8, 2011); *Wetzel v. Strain*, Civ. Action No. 09-7633, 2009 WL 5064445, at *1 (E.D. La. Dec. 16, 2009); *Luna v. Kliebert*, Civ. Action No. 09-3853, 2009 WL 2175773, at *1 n.1 (E.D. La. Jul. 17, 2009), *aff'd*, 368 Fed. App'x 500 (5th Cir. 2010); *Sosa v. Strain*, Civ. Action No. 06-9040, 2007 WL 1521441, at *7 (E.D. La. May 22, 2007). A *pro se* plaintiff's tenacity and zeal "are no substitute for the skill and experience which are needed to prosecute an action on behalf of a class." *Mackenzie v. Local 624, International Union of Operating Engineers*, 472 F. Supp. 1025, 1033 (N.D. Miss. 1979); *see also Luna*, 2009 WL 2175773, at *1 n.1; *Sosa*, 2007 WL 1521441, at *7.

Accordingly, it is recommended that plaintiff's "Motion for Certification of the Class" be **DENIED**.

---

[2] Rec. Doc. 5.

## II. Standards of Review

Federal law mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. §1915A(a). Regarding such lawsuits, federal law further requires: "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous ...." 28 U.S.C. § 1915A(b)(1). Additionally, with respect to actions filed *in forma pauperis*, such as the instant lawsuit, federal law similarly provides: "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ... is frivolous ...." 28 U.S.C. § 1915(e)(2)(B)(i).

A complaint is frivolous "if it lacks an arguable basis in law or fact." *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994). In making a determination as to whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Macias v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Although broadly construing plaintiff's complaint,[3] the undersigned recommends that, for the following reasons, this matter be dismissed as frivolous.

### III. Plaintiff's Claims

In his complaint, plaintiff alleges that he was convicted in 1998 of armed robbery and sentenced as an habitual offender under Louisiana Revised Statute Section 15:529.1 to a term of forty-nine and one-half years imprisonment. He further alleges that § 15:529.1 did not authorize imprisonment "at hard labor" until it was amended in 2010, long after he was sentenced. He therefore argues that, by confining him at hard labor at the B.B. "Sixty" Rayburn Correctional Center, a state prison operated by the Louisiana Department of Public Safety and Corrections, the defendants have subjected him to "involuntary servitude" in violation of the Thirteenth Amendment to the United States Constitution and have deprived him of a "state-created liberty interest" to avoid imprisonment at hard labor. He additionally argues that the defendants' actions in retroactively applying the 2010 amendments to § 15:529.1 violated the federal *Ex Post Facto* Clause.

Plaintiff's Thirteenth Amendment claim is patently frivolous. The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude, *except as a punishment for crime whereof the party shall have been duly convicted,* shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1 (emphasis added). It is therefore clear that requiring a convicted prisoner to work, with or without pay, does not

---

[3] The court must liberally construe a *pro se* civil rights complaint. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994).

4

violate the Thirteenth Amendment regardless of whether or not he was sentenced to hard labor. *See, e.g., Villarreal v. Morales*, 370 Fed. App'x 542, 543 (5th Cir. 2010) ("The Thirteenth Amendment ... excepts, from the general prohibition, compelled labor as punishment for a crime.  That exception applies even where the inmate, as in Villarreal's case, is not sentenced specifically to labor." (citation omitted)); *Smith v. Dretke*, 157 Fed. App'x 747, 748 (5th Cir. 2005) ("The Thirteenth Amendment permits involuntary servitude without pay as punishment after conviction of an offense, even when the prisoner is not explicitly sentenced to hard labor."); *Walton v. Texas Department of Criminal Justice, Institutional Division*, 146 Fed. App'x 717, 718 (5th Cir. 2005) ("Compelling an inmate to work without pay does not violate the Constitution even if the inmate is not specifically sentenced to hard labor. ");  *Ali v. Johnson*, 259 F.3d 317 (5th Cir. 2001) ("[I]nmates sentenced to incarceration cannot state a viable Thirteenth Amendment claim if the prison system requires them to work.").

Plaintiff's claim that he has a "state-created liberty interest" to avoid hard labor fares no better, in that it is foreclosed by *Sandin v. Conner*,  515 U.S. 472 (1995).  In *Sandin*, the United States Supreme Court held:

> [W]e recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause.  But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

*Sandin*, 515 U.S. at 483-84 (citations omitted).   Requiring a prisoner to work while incarcerated is not an atypical and significant hardship different from the ordinary incidents

of prison life. *Gill v. Texas Department of Criminal Justice*, No. 95-20723, 1996 WL 60544, at *2 (5th Cir. Jan. 23, 1996); *see also Ibarra v. Federal Bureau of Prisons*, Civ. Action No. 5:12-CV-139, 2013 WL 6065445, at *3 (N.D. Tex. Nov. 18, 2013) ("[W]ork is a typical condition of confinement."). In fact, the United States Fifth Circuit Court of Appeals has noted that, after *Sandin*, "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the *duration* of confinement, will henceforth qualify for constitutional 'liberty' status" entitled to procedural due process protections. *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (emphasis added). Stated differently, the Fifth Circuit has observed that the liberty interests protected by the Due Process Clause are "generally limited to state created regulations or statutes which affect the *quantity of time* rather than the *quality of time* served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (emphasis added). While requiring plaintiff to work while incarcerated may adversely affect the quality of his time in prison, it does not lengthen his sentence.

Finally, plaintiff's *ex post facto* claim also fails. As a preliminary matter, the Court notes that plaintiff's contention that state law did not allow an habitual offender sentence to be imposed at hard labor prior to the 2010 amendment is simply incorrect. In a similar case, the Louisiana First Circuit Court of Appeal rejected that argument, explaining:

> [T]he defendant argues the trial court lacked authority to order that the life imprisonment sentence be served "at hard labor" when the provision which allows a sentence to be imposed at hard labor under the Habitual Offender Law was not enacted until 2010 by Act No. 69.
>
> Although the "at hard labor" language was, in fact, added to LSA-R.S. 15:529.1(G) by 2010 La. Acts, No. 69 § 1, the addition of that condition to the

6

> Habitual Offender Law did not modify the sentencing provisions of any underlying felony offense.  The sentence conditions required by LSA-R.S. 15:529.1(G) are additions to, rather than replacements of, those conditions required by the sentencing provision for the underlying offense.  A sentence enhanced under the Habitual Offender Law is computed by referring to the underlying offense. *See State v. Robinson*, 46,330 (La. App. 2d Cir. 2/18/11), 54 So.3d 1292.
> 
> ....
> Furthermore, we note that statutory enactments are generally classified as substantive, procedural, or interpretive.  The Louisiana Supreme Court has stated:
>
>> Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that establish new rules, rights and duties or change existing ones.  Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted.  Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of laws.
>
> *State v. Washington*, 02-2196 (La. 9/13/02), 830 So.2d 288, 290 (per curiam).
>
> In the instant case, we find that Act 69 is an interpretive enactment intended to clarify the purpose of the Habitual Offender Law.  Clearly, the Habitual Offender Law was enacted with the intent to punish recidivism with hard labor sentences.  This is evident by the fact that certain third and fourth felony habitual offender sentences restrict parole eligibility.  The concept of parole is applicable only to hard labor sentences.

*State v. Douglas*, 72 So.3d 392, 398-99 (La. App. 1st Cir. 2011), *writs denied*, 90 So.3d 406 (La. 2012) and 115 So.3d 474 (La. 2013).[4]  Here, plaintiff was convicted of armed robbery.  The sentencing provision for that crime expressly provided for imprisonment at hard labor.  La.

---

[4] "[T]he construction of state laws is the exclusive responsibility of the state courts."  *Speiser v. Randall*, 357 U.S. 513, 522 n.7 (1958); *see also United States v. Escalante*, 239 F.3d 678, 680 n.6 (5th Cir. 2001) ("As state courts are the ultimate authority on issues of state law, federal courts are bound by their interpretations of state law.").

R.S. 14:64(B). Because his underlying offense allowed for a sentence at hard labor, that condition was a legal component of plaintiff's sentence as an habitual offender irrespective of the 2010 amendment. *See Douglas*, 72 So.3d at 398.

In any event, there would be no *ex post facto* problem even if the 2010 amendment had effected a substantive change in state law in that respect. In *Magoon v. Texas Department of Criminal Justice*, Nos. 99-40897 and 99-41060, 2001 WL 43533, at *2 (5th Cir. Jan. 5, 2001), prisoners brought *ex post facto* claims arguing that they were disciplined for refusing to perform work based on a Texas law enacted after they were convicted. The United States Fifth Circuit Court of Appeals found that "their *ex post facto* claim *may* be meritorious" and therefore remanded the case for the lower court to "determine the viability of the *ex post facto* claim." *Id*. (emphasis added). However, on remand, the lower court determined that the *ex post facto* claims were precluded because the Fifth Circuit subsequently clarified in *Ali v. Johnson*, 259 F.3d 317 (5th Cir. 2001), that prison authorities could always have imposed a work requirement under federal constitutional law, regardless of the precise terms of state law. *Magoon v. Cockrell*, Civ. Action No. 99-304 (S.D. Tex. Aug. 1, 2003) (Froeschner, M.J.) (adopted by Kent, J., on Sept. 16, 2003); *Austin v. Cockrell*, No. 99-424 (S.D. Tex. Aug. 1, 2003) (Froeschner, M.J.) (adopted by Kent, J., on Sept. 2, 2003). The United States Fifth Circuit Court of Appeals has since expressly rejected an *ex post facto* claim on a similar basis. *Villarreal v. Morales*, 370 Fed. App'x 542, 544 (5th Cir. 2010) ("Villarreal additionally contends that imposing labor on him pursuant to a statute enacted after he was sentenced violates the Ex Post Facto Clause. Although application to Villarreal of the law specifically permitting

8

compulsory labor was retrospective treatment, it neither altered the definition of criminal conduct nor increased his punishment."). That same analysis would apply in the instant case.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's "Motion for Certification of the Class," Rec. Doc. 5, be **DENIED**.

It is **FURTHER RECOMMENDED** that plaintiff's federal civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).[5]

New Orleans, Louisiana, this 8th day of April, 2014.

_____
 **MICHAEL B. NORTH**
 **UNITED STATES MAGISTRATE JUDGE**

---

[5] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.